UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,       : 15-CR-576(EV)
                                :
                                :
                                :
      -against-                 : United States Courthouse
                                : Brooklyn, New York
                                :
                                :
                                : Friday, January 20, 2017
JOSE RODRIGUEZ,                 :
                                :
          Defendant.            :
                                :

- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE ERIC VITALIANO
UNITED STATES SENIOR DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government: ROBERT L. CAPERS, ESQ.
                    United States Attorney
                    Eastern District of New York
                      271 Cadman Plaza East
                      Brooklyn, New York 11201
                 BY:  MARGARET GANDY, ESQ.
                      Assistant United States Attorney

For the Defendant:    LLOYD EPSTEIN, ESQ.


Court Reporter:  Richard W. Barry, RPR
                 Official Court Reporter
                 E-mail: rwbarrycourtreporter@gmail.com

        Proceedings recorded by computerized stenography.
        Transcript produced by Computer-aided Transcription.

1        COURTROOM DEPUTY:  Case on the calendar, United

2   States versus Rodriguez, case number 15-CR-576, on for a

3   guilty plea.

4        Will the attorneys please note appearances beginning

5   with the Government.

6        MS. GANDY:  Morning Your Honor, Margaret Gandy

7   standing in for Kevin Trowel for the Government.

8        MR. EPSTEIN:  Lloyd Epstein for Mr. Rodriguez.

9        THE COURT:  Good morning.

10       COURTROOM DEPUTY:  Counsel for both sides are

11  present, including the defendant.

12       THE COURT:  Mr. Epstein, I understand from the

13  announcement of the case, that Mr. Rodriguez intends to change

14  his plea.

15       MR. EPSTEIN:  Yes, Your Honor.

16       First, Mr. Rodriguez has to sign the plea agreement.

17       THE COURT:  Surely.

18       (Pause.)

19       MR. EPSTEIN:  We are ready, Your Honor.

20       THE COURT:  Okay.  Let us begin with Mr. Villanueva

21  swearing in Mr. Rodriguez.

22  JOSE RODRIGUEZ, having been first duly sworn, testified as

23  follows:

24       THE COURT:  Morning Mr. Rodriguez.

25       THE DEFENDANT:  Good morning, sir.

1    THE COURT:  Before I can take your plea, I must ask

2    you a number of questions to assure myself that the plea is a

3    valid one.  These questions are designed to assure me that you

4    understand the charges against you, the consequences of

5    pleading guilty to those charges, the rights that you have,

6    the rights that you waive by pleading guilty.  That any

7    decision to plead guilty is not only knowing, but voluntary.

8    Lastly, that you will tell me facts under oath that

9    show that you are guilty of the charge to which you plead

10   guilty.

11   So the questions are important.  And to the extent

12   that you either do not hear them or do not understand them,

13   please let me know, and I will repeat or rephrase them for you.

14   Do you understand that?

15   THE DEFENDANT:  Yes, sir.

16   THE COURT:  Now, at the call of the calendar in this

17   case, Mr. Epstein was standing next to you, indicated to me

18   that he is your lawyer for this case.

19   A defendant in a criminal case at every stage has

20   the right to be represented by competent counsel and if a

21   defendant could not afford counsel, then counsel would be

22   appointed for him.

23   Is Mr. Epstein your lawyer for this case?

24   THE DEFENDANT:  Yes, sir.

25   THE COURT:  Now, that means that at any point during

1    this hearing, if you need to speak privately with Mr. Epstein,

2    just let me know and I will permit you to do that, without any

3    penalty whatsoever.

4              Do you understand that?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Now, at the beginning of the proceeding,

7    I asked you to be placed under oath.  That means that any of

8    the questions that you answer at this hearing, regardless of

9    who asks you the question, that those answers that you give,

10   can be used against you, if they are false, or making a false

11   statement or for the crime of perjury.

12             Do you understand that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  So, with all those understandings, we

15   now want to back all the way up to the beginning.  I will ask

16   you to place on the record your full name.

17             THE DEFENDANT:  Jose Angel Rodriguez.

18             THE COURT:  And Mr. Rodriguez, how old are you?

19             THE DEFENDANT:  49.

20             THE COURT:  What is the highest grade that you

21   completed in school?

22             THE DEFENDANT:  10th.

23             THE COURT:  Where did you attend school?

24             THE DEFENDANT:  Last school was Franklin Kennedy

25   High School.

1       THE COURT:  Is that here in New York?

2       THE DEFENDANT:  Yes, Jamaica, Queens.

3       THE COURT:  Now, Mr. Rodriguez, are you currently or

4  have you recently been under the care of a medical doctor?

5       THE DEFENDANT:  Checked me for my back injuries, I

6  have a herniated disc, my spine was hit.  The knees are shot

7  as well.

8       MR. EPSTEIN:  He is also in treatment for

9  hypertension, hepatitis C.

10       THE COURT:  Other than hepatitis C, you pretty much

11  described most 50-year old guys that I know.  Many share your

12  pain.

13       Are you currently or are you recently under the care

14  of a psychiatrist?

15       THE DEFENDANT:  I go like every month just to talk,

16  take my stress out-- my depression problem.

17       THE COURT:  At the detention center?

18       THE DEFENDANT:  Yes.

19       THE COURT:  In the last 24 hours, have you taken any

20  narcotic drugs?

21       THE DEFENDANT:  No, sir.

22       THE COURT:  Last 24 hours, have you taken

23  medications of any kind?

24       THE DEFENDANT:  Yes, sir, what I take every day.

25       THE COURT:  What kind of medications were they?

1    THE DEFENDANT:  Norvast (ph), high blood pressure

2  pill, a water pill.  For pain I take ibuprofen, 800-milligram,

3  600.

4    THE COURT:  Do any of those medications affect your

5  ability to understand what goes on around you?

6    THE DEFENDANT:  No, sir.

7    THE COURT:  In the last 24 hours, have you consumed

8  any alcoholic beverages?

9    THE DEFENDANT:  No, sir.

10    THE COURT:  Now, other than the depression that you

11  have mentioned to me, have you ever been treated for any other

12  or hospitalized for any other mental illness?

13    THE DEFENDANT:  No.

14    THE COURT:  Have you ever been hospitalized or

15  treated for any drugs or alcohol?

16    THE DEFENDANT:  At fifteen, back and forth.

17    THE COURT:  What?

18    MR. EPSTEIN:  He said since the age of 15, back and

19  forth.

20    THE COURT:  Various kinds.

21    For substance?

22    THE DEFENDANT:  Controlled substance, use of heroin.

23    THE COURT:  And when is the last time that you had

24  treatment?

25    THE DEFENDANT:  Before I came in.  I was in Westside

1  Medical Group, on 35th and 8th Avenue, I believe.

2           THE COURT:   That was an outpatient?

3           THE DEFENDANT:   Yes.

4           THE COURT:   Offhand, I don't recall when you entered

5  federal detention.   When was that?

6           THE DEFENDANT:   I believe November 17th, 2015, sir.

7           THE COURT:   So you have had no treatment since then?

8           THE DEFENDANT:   No.

9           MR. EPSTEIN:   One moment.

10          (Pause.)

11          THE DEFENDANT:   The methadone.

12          MR. EPSTEIN:   At the time that Mr. Rodriguez was

13 arrested, he was on methadone, and since then, he has been

14 taken off of the methadone.   So that is a form of drug

15 treatment.

16          THE DEFENDANT:   Yes.

17          THE COURT:   The removal of the methadone?

18          THE DEFENDANT:   Yes.

19          THE COURT:   And that occurred when you first entered

20 custody?

21          THE DEFENDANT:   Yes.

22          THE COURT:   Most importantly, as you stand before me

23 this morning, is your mind clear?

24          THE DEFENDANT:   Yes, sir.

25          THE COURT:   You understand what is going on around

1  you in the courtroom?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Now, Mr. Epstein, have you had a full

4  and fair opportunity to discuss this case with Mr. Rodriguez?

5          MR. EPSTEIN:  Yes.

6          THE COURT:  On the basis of your conversations with

7  him, did you conclude that he understands the nature of these

8  proceedings?

9          MR. EPSTEIN:  Yes.

10          THE COURT:  And, do you believe that he understands

11  the nature of the rights that he would waive by pleading

12  guilty?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Based on your conversations, do you have

15  an opinion as to whether or not he is competent to enter a

16  plea of any kind at this time?

17          MR. EPSTEIN:  I believe he is competent.

18          THE COURT:  Have you discussed with Mr. Rodriguez,

19  the maximum sentence and fine that can be imposed in this

20  case?

21          MR. EPSTEIN:  Yes.

22          THE COURT:  Have you also discussed with him the

23  operation of the sentencing guidelines and the context of

24  recent court decisions?

25          MR. EPSTEIN:  Yes.

1       THE COURT:   Now, Mr. Rodriguez, Mr. Epstein as you

2   just heard, told me, he believes, he has had a full and fair

3   opportunity to discuss your case with you.   Do you believe

4   that you have had a full and fair opportunity to discuss your

5   case with him?

6       THE DEFENDANT:   Yes, sir.

7       THE COURT:   Are you fully satisfied with the

8   representation and advice that you have received from Mr.

9   Epstein about this case?

10      THE DEFENDANT:   Yes, sir.

11      THE COURT:   Now, Ms. Gandy, I will ask you to place

12  on the record at this time the charge or charges to which it

13  is anticipated that Mr. Rodriguez will enter a plea of guilty.

14      MS. GANDY:   Yes, Your Honor.

15      Mr. Rodriguez has agreed to plead guilty to two

16  counts.   The first is a lesser included count within Count One

17  of the indictment.   And that is, to the crime of participating

18  in a conspiracy to distribute heroin, cocaine base, cocaine

19  and marijuana.   He has agreed to plead guilty as I said to a

20  lesser included which pertains to the weight, which he is

21  willing to acknowledge his participation in.

22      That is under 21-- Title 21, United States Code

23  Section 841(b)(1).

24      THE COURT:   No weight stated or lesser.

25      MS. GANDY:   Lesser amount.

1    MR. EPSTEIN:  The five to 40-year count, Your Honor.

2    MS. GANDY:  Exactly.

3    He had originally been indicted on the 10-year

4 mandatory minimum.

5    Count Two of the indictment which he agreed to plead

6 guilty to, the unlawful use and possession of a firearm,

7 specifically the brandishing of the firearm under 924(c)(1)--

8 924(c) and at the time of sentencing assuming the plea goes

9 through, the Government will move to dismiss the other counts

10 of the indictment against Mr. Rodriguez.

11    THE COURT:  That is use of firearm in connection

12 with the drugs?

13    MS. GANDY:  Yes, Your Honor.

14    THE COURT:  All right.

15    Mr. Rodriguez are those among the charges that you

16 have had an opportunity to discuss with Mr. Epstein?

17    THE DEFENDANT:  Yes, sir.

18    THE COURT:  And do you understand those charges?

19    THE DEFENDANT:  Yes, sir.

20    THE COURT:  Do you have any questions about them?

21    THE DEFENDANT:  No, sir.

22    THE COURT:  And they are the charges to which you

23 intend to plead guilty?

24    THE DEFENDANT:  Yes, sir.

25    THE COURT:  Now, what I want to do next is to go

1   over with you, your rights.  I know based on what you and Mr.

2   Epstein have both told me, you have already done this.  I want

3   to assure myself on the record that you understand the rights

4   that-- the principal rights that you waive by pleading guilty.

5           The first and most important thing you must

6   understand is that even if you are guilty, you don't have to

7   plead guilty.

8           Under the constitution and laws of the United

9   States, it is the Government's burden, the Government's

10  obligation to establish the guilt of a defendant beyond a

11  reasonable doubt.  And if the prosecutor does not or cannot

12  meet her burden of proof, then the jury has the duty to find

13  that defendant not guilty, even if the defendant is guilty.

14          So, what that means is that even if you are guilty,

15  you still have a choice.  It is up to you to decide what to

16  do, not your lawyer or anybody else.  You may enter a plea of

17  guilty and withdraw your plea of not guilty, as you apparently

18  wish to do, or you may maintain your plea of not guilty, go to

19  trial and make the Government meet its burden of proof.

20          Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Now, if you did plead not guilty, indeed

23  you would be entitled to a speedy and public trial, presumably

24  right in this very courtroom, before a jury and with the

25  assistance of counsel on the charges contained in the

1 | indictment.

2 |        Do you understand that?

3 |        THE DEFENDANT:  Yes, sir.

4 |        THE COURT:  Now, at the trial, you would be presumed

5 | innocent.  You would not have to prove that you were innocent.

6 | It is the Government's burden to prove you are guilty.

7 |        Do you understand that?

8 |        THE DEFENDANT:  Yes, sir.

9 |        THE COURT:  But by pleading guilty, you relieve the

10 | Government of the burden of proving that you are guilty.

11 |        Do you understand that?

12 |        THE DEFENDANT:  Yes, sir.

13 |        THE COURT:  Now, at the trial, the witnesses for the

14 | Government would have to come into open court, testify in your

15 | presence, your lawyer would have the right to cross examine

16 | those witnesses for the Government, to object to evidence

17 | offered by the Government, to raise defenses on your behalf,

18 | to call witnesses on your behalf, including witnesses who

19 | might not want to testify.

20 |        Do you understand that?

21 |        THE DEFENDANT:  Yes, sir.

22 |        THE COURT:  But by pleading guilty, you give up your

23 | right to confront the witnesses who would testify against you,

24 | you give up your right to raise defenses, and your right to

25 | offer proof on your own behalf.

1      Do you understand that?

2      THE DEFENDANT:  Yes, sir.

3      THE COURT:  Now, at a trial, you would have the

4  right to take the stand and testify in your own behalf, if you

5  chose to do so.

6      Do you understand that?

7      THE DEFENDANT:  Yes, sir.

8      THE COURT:  And, though a defendant in a criminal

9  case in the United States, cannot be forced to take the

10  witness stand, and say anything that could be used to show

11  that he is guilty of the crimes with which he has been

12  charged.  If you decided not to testify, I would instruct the

13  jury that that was your right against self incrimination and

14  that they could not hold that fact against you.

15      But if you do plead guilty, you are giving up your

16  right against self incrimination, because you have admitted

17  your guilt.

18      Do you understand that?

19      THE DEFENDANT:  Yes, sir.

20      THE COURT:  Now, actually, at this proceeding, it

21  goes even beyond that.  Not only do you give up your right

22  against self incrimination, you will through statements that

23  you will make or answers to questions that will be put to you,

24  you will actually give me facts on the record that show that

25  you are guilty of the charges to which you plead guilty.

1          Do you understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Now, if you offer your plea of guilty

4    and I accept it, you will be giving up all of the rights I

5    have just discussed with you.  There will be no trial of any

6    kind.  I will simply enter a plea-- a judgement of conviction

7    based on your guilty plea.

8          Do you understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  And Ms. Gandy, is there an appellate

11    waiver in the agreement?

12          MS. GANDY:  There is, Your Honor.

13          The defendant agrees not to file an appeal or

14    otherwise challenge the conviction if he is sentenced to a

15    term of 319 months or below.

16          THE COURT:  Let me explain what that appellate

17    waiver business is all about Mr. Rodriguez.

18          If you are to go to trial and be found guilty by the

19    jury, you would then have a right to appeal both the

20    conviction and the sentence.  But by entering into a plea

21    agreement that contains an appellate waiver, you are giving up

22    your right to appeal the conviction or to challenge, all, part

23    or any of the sentence that I impose.

24          Do you understand that?

25          THE DEFENDANT:  Yes, sir.

1      THE COURT:  With all--

2      MS. GANDY:  Your Honor, if I may.

3      MR. EPSTEIN:  Well, the sentence were above

4 319 months.

5      THE COURT:  I will get to that.  We get to specifics

6 later.

7      The concept is, that he gives up part of his

8 appellate rights.

9      MR. EPSTEIN:  Yes.

10      THE COURT:  He understands that.

11      MR. EPSTEIN:  Yes.

12      THE COURT:  I don't stop there.  We will get there

13 very expressly because it is an important part of the deal,

14 that is why I separate it out and do it again.  So everybody

15 knows where we are.

16      MS. GANDY:  Your Honor, I wanted to flag for Your

17 Honor, that -- plea agreements don't always include that, but

18 in this instance, the defendant is also stipulating to some

19 additional factual criminal conduct.  So to the extent Your

20 Honor is reviewing waivers, I thought that I put that on your

21 radar as well.

22      THE COURT:  Well, why don't you tell me.

23      MS. GANDY:  Would you like me to read them?

24      THE COURT:  You can read them as well.

25      So these are-- Ms. Gandy will tell us what they are,

1    then I will make sure you understand it.

2              MR. EPSTEIN:   These are facts that constitute the

3    brandishing.

4              THE COURT:   I assumed that that is what they were.

5              MS. GANDY:   Specifically, Your Honor, the defendant

6    in paragraph four of the plea agreement, the defendant

7    stipulates and admits that one, in the course of the narcotics

8    conspiracy to which he is pleading guilty, the defendant

9    possessed one or more firearms in furtherance of the narcotics

10   conspiracy.

11             Two.   On or about August 12th, 2015, the defendant

12   discharged one such firearm in the direction of an individual

13   with whom the defendant had a dispute over a car.

14             And three, in or about August 2015, the defendant

15   instructed a coconspirator to discharge another such firearm,

16   at individuals driving a car on New York State Route 878, and

17   the coconspirator discharged the firearm.

18             THE COURT:   Do you understand you have agreed to

19   those facts Mr. Rodriguez?

20             THE DEFENDANT:   Yes, sir.

21             THE COURT:   All right.

22             As I indicated, you have indicated that you

23   understand your rights, and that you still intend to offer

24   your plea of guilty.

25             And Mr. Epstein mentioned a written plea, at the

1   very top of the hearing.  So I assume the Deputy Clerk has

2   marked that plea agreement as a Court Exhibit.

3              He has, it is marked as Court Exhibit 1.

4              Just to double check on what appears to be page 11,

5   signatures are affixed.

6              Mr. Rodriguez, that plea agreement, marked as Court

7   Exhibit 1, that is your signature?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Is that the signature you placed on the

10  document when you entered the courtroom?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Mr. Epstein, have you signed it as well?

13             MR. EPSTEIN:  Yes.

14             THE COURT:  Ms. Gandy?

15             MS. GANDY:  I have.

16             THE COURT:  Anyone else?

17             MS. GANDY:  The supervisor in my office Alon

18  Lipshitz has signed it.

19             THE COURT:  Now Mr. Rodriguez, before you signed the

20  plea agreement, Court Exhibit 1, did you read it?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Did you fully discuss it with Mr.

23  Epstein?

24             THE DEFENDANT:  Yes.

25             THE COURT:  And, do you understand it?

1          THE DEFENDANT:   Yes.

2          THE COURT:   And do you have any questions about it?

3          THE DEFENDANT:   No, sir.

4          THE COURT:   And your signature in open court earlier

5     today, that was voluntary, no one forced you to sign it, did

6     they?

7          THE DEFENDANT:   No, sir.

8          THE COURT:   You do not have any other agreements

9     with the Government about this case?

10         THE DEFENDANT:   No, sir.

11         THE COURT:   Mr. Epstein, you did in fact fully

12    discuss this plea agreement with Mr. Rodriguez?

13         MR. EPSTEIN:   Yes.

14         THE COURT:   Based on your discussions with him, did

15    you conclude that he understood it?

16         MR. EPSTEIN:   Yes.

17         THE COURT:   Did you conclude that his decision to

18    sign it was voluntary?

19         MR. EPSTEIN:   Yes.

20         THE COURT:   To the best of your knowledge, and

21    information, this is the only agreement Mr. Rodriguez has with

22    the Government about this case?

23         MR. EPSTEIN:   Yes.

24         THE COURT:   Now, I want to go over that agreement

25    with you in some detail Mr. Rodriguez, to make sure I

1    understand that you understand it.

2           I am going to go over it with Ms. Gandy being

3    appointed as the monitor of my eyes to make sure that I don't

4    misstate what the possible consequences of your plea are.

5           The first area that I want to cover with respect to

6    Count One is the possibility of imprisonment.  Under the

7    sections of law that control this particular count, those

8    sections require me to impose a minimum sentence of no less

9    than five years, but authorize me to impose a sentence as long

10   as forty years.

11          Do you understand that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Now, the second area that I want to

14   discuss with you is the possibility of supervised release.

15   Supervised release refers to that period of time following any

16   period of imprisonment.  The defendant who has been imprisoned

17   is released from jail on certain terms and conditions.  If

18   during the period of supervised release that defendant were to

19   violate one of those terms or conditions, well that defendant

20   could be sent back to prison for additional jail time.

21          Do you understand that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Now, under the sections that control

24   here, the minimum term of four years of supervised release.

25          MS. GANDY:  Yes.

1          THE COURT:   The maximum is life?

2          MS. GANDY:   That's right.

3          THE COURT:   The penalty period is up to?

4          MS. GANDY:   If he violates a condition of release,

5     he may be sentenced up to three years without credit.

6          THE COURT:   What that means again, this section

7     requires me to impose supervised release, requires me to

8     impose a period of not less than four years of supervised

9     release.  It could be as long as the rest of your life and for

10    whatever the period is, should you violate a term or condition

11    of the release, you can be sent back to jail for up to

12    three years without time -- credit for any time previously

13    served in prison or time previously spent on supervised

14    release.

15         Do you understand that?

16         THE DEFENDANT:   Yes, sir.

17         THE COURT:   Now, the sections of law that this count

18    also empower the Court to impose a fine and the maximum fine

19    on this count is five million?

20         MS. GANDY:   Correct.

21         THE COURT:   $5 million.

22         Do you understand that?

23         THE DEFENDANT:   Yes, sir.

24         THE COURT:   And the sections of law also require me

25    to impose a $100 special assessment.

1        Do you understand that?

2        THE DEFENDANT:  Yes, sir.

3        THE COURT:   There is no forfeiture in this case?

4        MS. GANDY:   There is, Your Honor.  It is set forth

5   in paragraph 7 through 13.

6        THE COURT:   Is there an amount fixed?

7        MS. GANDY:   There is no money judgment, Your Honor.

8   There is the forfeiture of various properties that was seized

9   from him and he has also agreed to complete a financial

10  affidavit that is to be submitted by next Friday.

11        THE COURT:   In connection with both counts or just

12  Count One?

13        MS. GANDY:   With both counts, Your Honor.

14        THE COURT:   This is a common element, and the

15  properties are identified.

16        MS. GANDY:   Yes, they are itemized in paragraph 7.

17        THE COURT:   Now, you understand that as a

18  consequence of pleading guilty to both this count and/or the

19  other second count, that you will be forfeiting certain

20  properties that you own?

21        THE DEFENDANT:  Yes.

22        THE COURT:   Do you understand that?

23        THE DEFENDANT:  Yes.

24        THE COURT:   Now, are you a citizen of the United

25  States, Mr. Rodriguez?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  The only reason I ask that, is if you

3   were not, then as a consequence of this plea, you could be

4   ordered to-- with respect to both counts, or either count, you

5   could be ordered removed, deported or excluded from the United

6   States.

7          Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Now, the second count is the firearms

10  charge and this is the minimum term here is-- this is a 7-year

11  mandatory minimum consecutive penalty.

12         MS. GANDY:  That's correct.

13         THE COURT:  So this one could be as long as--

14         MS. GANDY:  Life is the maximum.

15         THE COURT:  Life as well.

16         So what that means is that the Court is required, if

17  you plead guilty to this count, required to impose a 7-year

18  minimum term of imprisonment, which must run consecutively to

19  the time imposed on the first count, but can run as long as

20  the rest of your life.

21         Do you understand that?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  And any point in between, anywhere

24  between seven and life, do you understand that?

25         THE DEFENDANT:  Yes, sir.

1      THE COURT:   Now is the supervised release term the

2  same--

3      MS. GANDY:   It is not.   There is a-- excuse me, a

4  maximum of five years on this count.

5      THE COURT:   No minimum.

6      MS. GANDY:   No minimum.

7      THE COURT:   So, it is slightly different.

8  Supervised release terms run concurrently in any event.   But

9  on this-- with respect to this count, there is no minimum and

10  the maximum is five years.

11      Do you understand that?

12      THE DEFENDANT:   Yes, sir.

13      THE COURT:   Is there a fine with respect to this?

14      MS. GANDY:   There is a maximum fine of $250,000,

15  Your Honor.

16      THE COURT:   The maximum fine, that can be-- that can

17  be imposed and the maximum fine is $250,000.

18      Do you understand that?

19      THE DEFENDANT:   Yes, sir.

20      THE COURT:   We already discussed forfeiture because

21  it is the same as Count One.   But-- possibility if you were

22  not a citizen, deportation would be the same.   And the special

23  statutory assessment that is also the same, is it not?

24      MS. GANDY:   $100, yes, Your Honor.

25      THE COURT:   That is also cumulative.   It is one

1   hundred on each count for a total of $200.

2           Do you understand that?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  So those are the possible consequences

5   of the plea.

6           As I said earlier, with respect to the appellate

7   waiver, I do that separately because when we go over some of

8   the consequences we have just went over, are possible, meaning

9   they are a range.

10          This consequence of your plea is part of the

11  contract.  It is part of the deal.  A contractual term.  It is

12  simply this.  But by agreeing to this plea, you are giving up

13  your right to file an appeal or to collaterally attack your

14  sentence in any way if the Court imposes upon you a total

15  sentence of 319 months or below.

16          Do you understand that?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Now, I want to continue our discussion

19  with respect to sentencing, because as I indicated when we

20  went over, as we went over these possible consequences of your

21  plea, that there were sentencing ranges.

22          But the mere fact that there is a range, doesn't

23  mean the Court is free to pick out a number somewhere in

24  between.  There is a process for doing that.

25          The process begins with the guidelines, promulgated

1   by the United States Sentencing Commission.   Those guidelines

2   pinpoint a specific sentence for any given offense.   They

3   point the Court to factors that could lead the Court to depart

4   from that pinpoint, either upwardly or downwardly.   And while

5   these guidelines are no longer mandatory, they do remain

6   advisory, so that the Court has to look at them and take

7   advice from them.

8                   Do you understand that?

9                   THE DEFENDANT:   Yes, sir.

10                  THE COURT:   So concretely what happens next.   At the

11   conclusion of this hearing, the work of the United States

12   Probation Office begins.   Probation will conduct a separate

13   investigation into the offenses of conviction and to the

14   personal circumstances of your life, your personal history,

15   your criminal history, if any, and they will make a report.

16                  That report will be sent to you and Mr. Epstein and

17   it will be sent to the Government.   It will be sent to me as

18   well.

19                  In that report, probation will make a recommendation

20   with respect to their findings of what the guidelines should

21   be, what the offense level and what the criminal history

22   category should be.

23                  No one can predict with precision what probation

24   will recommend, and no one including me, can predict right now

25   with precision, what I will do with the recommendation, when I

1    get it.   But, it is important to know that it will be there.

2           Now, after we all receive that report, and everyone

3    has had a chance to look at it, we will come back to court for

4    another hearing like this.

5           The first thing the Court will do, we will hear the

6    lawyers as to what the guidelines should be and the Court will

7    then set the guidelines.

8           The Court will then go into the sentencing process

9    itself.   That process is controlled by Title 18, United States

10   Code section 3553(a).   That section sets forth various

11   standards, goals and objectives for the Court to achieve in

12   imposing a sentence.

13          Nothing really remarkable, the Court has done it for

14   a long time.   That is to try to fashion a penalty that -- a

15   punishment that fits the crime.

16          And, one of the objectives is to provide a

17   punishment.   That there should be a penalty that restricts the

18   defendant, takes something away from the defendant, somewhat

19   as a consequence of his having violated the law.

20          It also tells the Court that the more serious the

21   crime, the more substantial the punishment should be.   The

22   Court is told also that its sentence must promote respect for

23   the law.   If Congress enacts all of these laws and the Court

24   never imposes any of the penalties that the Congress enacts,

25   well there is not going to be much respect for the law.   So

1  the Court has to be concerned about that, between the statutes

2  and the actual conduct of what happens in the courtroom.

3          The Court is always very much concerned about

4  deterrence, that the punishment -- the penalty will in some

5  way deter the defendant specifically from committing any

6  further crimes.  And also, stand as a general warning for the

7  public at large, not to engage in this kind of conduct or

8  similar penalties can be imposed on them.

9          The sections of law also tell the Court that, if

10  there is a need to incapacitate you, remove somebody from

11  society, to protect society, that the Court should be mindful

12  of that as well.  Be mindful of any rehabilitative needs of a

13  defendant, to get to look at the personal characteristics of

14  the defendant.  To see how that defendant is like or unlike

15  other people who have committed the same offense.  So that

16  the-- there should by harmony in the sentences, that people

17  who are similarly situated for doing similar things should

18  face similar penalties.  So that is also a concern.

19          Then, lastly, the section tells the Court, that

20  after you figure out all these competing objectives, that the

21  Court's sentence should be no harsher than necessary to

22  accomplish that.

23          Do you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Now, I also ask-- so I say no one can

1  predict with precision, and I do it merely as a piece of

2  information that a defendant could have, at the time of

3  sentence, at the time of the plea.  But no one can predict the

4  position, it doesn't mean the lawyers can't make an

5  approximation of what they think probation will recommend to

6  the Court what the guidelines are.

7          Ms. Gandy, has the Government made an approximation

8  of this case?

9          MS. GANDY:  We have.  The Government estimates that

10  a combined guideline range for both counts combined would be

11  252 to 294 months.  That is after crediting the defendant

12  three acceptance points.  And I will note that the defendant

13  in this plea agreement has stipulated to those guideline

14  calculations and agreed not to challenge the drug type or

15  quantity set forth in the drug labs relevant to the case.

16          MR. EPSTEIN:  That's correct, Your Honor.

17          THE COURT:  And that is for your information,

18  keeping in mind that the final arbiter of what the guidelines

19  are, is me.  Regardless of any stipulation that counsel have

20  made.

21          Do you understand that?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  And you understand that if at the end of

24  the day, these guidelines prove different, the mere fact that

25  they are different from what has been estimated, doesn't give

1  you a ground then to withdraw the plea you entered now.

2          Do you understand that?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Okay.  Now, I pause for the following

5  Mr. Rodriguez, if you have any questions for me, the Court

6  Reporter will take them down, I will try to answer them on the

7  record.  If you need to speak privately with Mr. Epstein, I

8  will give you time for that.  If you don't need time for

9  either of those two things, I would simply move to take your

10  plea.

11          Do you need additional time or are you ready now to

12  offer your plea?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  You are ready?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Let me begin with Mr. Epstein.

17          Mr. Epstein, do you know of any reason why Mr.

18  Rodriguez should not enter a plea of guilty at this time?

19          MR. EPSTEIN:  No.

20          THE COURT:  Are you aware of any viable legal

21  defenses to these charges?

22          MR. EPSTEIN:  No.

23          THE COURT:  Then, Mr. Rodriguez, I ask you, with

24  respect to the Count One and its lesser included form, what is

25  your plea, guilty or not guilty?

1      THE DEFENDANT:  Guilty, sir.

2      THE COURT:  And with respect to Count Two, what is

3  your plea, guilty or not guilty?

4      THE DEFENDANT:  Guilty, sir.

5      THE COURT:  Now, are you pleading guilty to these

6  two charges voluntarily and of your own free will?

7      THE DEFENDANT:  Yes, sir.

8      THE COURT:  Has anyone forced you or threatened you

9  to plead guilty?

10      THE DEFENDANT:  No, sir.

11      THE COURT:  Other than the promises contained in the

12  plea agreement marked as Court Exhibit 1, has anyone made any

13  other promises to you to induce you to plead guilty?

14      THE DEFENDANT:  No, sir.

15      THE COURT:  Has anyone made any promises to you as

16  to what your final sentence would be?

17      THE DEFENDANT:  No, sir.

18      THE COURT:  Now, earlier in the proceeding, you may

19  recall, I asked Ms. Gandy to place the nature of the charges

20  on the record and I said, there would come a point, either

21  through a narrative or answer to questions, that you would

22  have to give me facts that show that you are guilty of the two

23  charges to which you have just plead guilty.  We have reached

24  that point.

25      Mr. Epstein, I don't know if you arranged for a

1  narrative or make inquiry of Mr. Rodriguez, to ascertain this

2  information.  We can proceed either way.

3           MR. EPSTEIN:  You can say it in your own words.

4           THE COURT:  Please proceed Mr. Rodriguez.

5           THE DEFENDANT:  For the time that I was selling

6  narcotics, I sold drugs in the Rockaway area.

7           THE COURT:  Were you working with other people?

8           THE DEFENDANT:  Yes.

9           And in the course of that, I got into an

10 altercation.  I pulled out a gun on a person, scared him off.

11 Didn't hurt him.  Just scared him off my property.  That's it.

12          THE COURT:  Do you recall the kind of drugs that you

13 were selling?

14          THE DEFENDANT:  I was selling heroin.

15          THE COURT:  Are there other kinds also included?

16          MS. GANDY:  The count includes heroin, cocaine base,

17 cocaine and marijuana, Your Honor.

18          THE COURT:  So anyone is sufficient in your mind?

19          MS. GANDY:  Acknowledging his participation in the

20 consequences to distribute heroin is sufficient, Your Honor.

21          I would just ask the defendant to acknowledge since

22 he is pleading to 841(b)(1)(b), that there was at least

23 100 grams of heroin involved in the conspiracy and also, that

24 the conspiracy charged existed between December 2014, and

25 November 2015.

1          THE DEFENDANT:   That is correct, Your Honor.

2          THE COURT:   On both scores?

3          THE DEFENDANT:   Yes.

4          THE COURT:   Both the amount and the dates?

5          THE DEFENDANT:   Yes, sir.

6          THE COURT:   Are you satisfied?

7          MS. GANDY:   On that count, yes.

8          THE COURT:   Now with respect to --

9          MR. EPSTEIN:   I think--

10         THE COURT:   You mentioned the gun, you mentioned
11    that it was discharged, that you wanted to scare people.

12         Was it in connection with the conspiracy to
13    distribute the heroin that you had?

14         THE DEFENDANT:   No.

15         (Pause.)

16         THE DEFENDANT:   Yeah.   Yes.

17         THE COURT:   As a result, because of your involvement
18    in the heroin conspiracy, drug conspiracy, the weapons were
19    discharged?

20         THE DEFENDANT:   Yes.

21         THE COURT:   And that that occurred at or around in
22    that same period of time?

23         THE DEFENDANT:   Yes, sir.

24         THE COURT:   Also in Rockaway, was it?

25         THE DEFENDANT:   Yes.

1      THE COURT:   Ms. Gandy?

2      MS. GANDY:   Yes.   To the extent that the defendant

3  acknowledges he is stipulating to the specific facts I read

4  earlier, I think those can supplement the allocution

5  appropriately.

6      THE COURT:   That makes you satisfied.

7      MS. GANDY:   Yes.

8      THE COURT:   He has stipulated to those facts

9  already?

10      MS. GANDY:   Yes.

11      THE COURT:   On that basis, the Court is also

12  satisfied.   The Court finds Mr. Rodriguez that you understand

13  these charges against you.   That you understand the

14  consequences of pleading guilty to them.   That you understand

15  your rights, the rights that you now waived by pleading

16  guilty.   That your decision to do so was not only knowing but

17  voluntary and through your allocution here at the time of the

18  plea, you have also given me facts that show you are indeed

19  guilty of these two charges.

20      So the Court accepts your plea of guilty to

21  Counts One and Two.   Count One being the lesser included form.

22      The Court does not-- we don't set a sentencing date

23  now.   The Probation Department as I indicated earlier will

24  begin its work and after everyone has had a chance to review

25  their work, we will come back for another hearing.

1    Mr. Epstein, you will be appointed the marshal of my
2    Probation friends.  To the extent they are not proceeding at a
3    pace which is usually twelve to fourteen weeks, please let Mr.
4    Villanueva know, he will use his good offices to encourage
5    them for you.
6    MR. EPSTEIN:  Very good.
7    THE COURT:  I assume the record will reflect,
8    whenever it is that Probation actually makes contact with Mr.
9    Rodriguez, you wish to be notified and to be present?
10    MR. EPSTEIN:  Yes.
11    THE COURT:  The record does reflect that.
12    Anything else we need to attend to before we
13    adjourn?
14    MS. GANDY:  No, not on behalf of the Government, no,
15    Your Honor.
16    MR. EPSTEIN:  No, Your Honor.
17    THE COURT:  Mr. Rodriguez, good luck to you, we will
18    see you.
19    MR. EPSTEIN:  One moment.
20    (Pause.)
21    MR. EPSTEIN:  Your Honor, Mr. Rodriguez asked me
22    whether on the gun charge, is to a lesser included.
23    Technically it is lesser included it is to the 7-year minimum
24    not the 10-year, I think that is clear in the record.
25    THE COURT:  It was seven.  Do you understand it was

1   seven?

2               THE DEFENDANT:  Good, thank you.

3               THE COURT:  There is even a heavier one.  There is a

4   25-year one also.

5               MR. EPSTEIN:  Okay.  Your Honor, I think what was a

6   little confusing to Mr. Rodriguez, we kind of did the drug

7   count as lesser included.  We didn't use the same language.

8               For practical purposes it is the lower count.

9               THE COURT:  It is.

10              Okay?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Good luck to you Mr. Rodriguez, see you

13  at the time of sentence.

14              Ms. Gandy, we will give you the plea agreement back.

15              MS. GANDY:  Thank you.

16              MR. EPSTEIN:  Have a nice weekend.

17              THE COURT:  Yes, you too.

18              (Matter concluded.)

19                   - - o o O o o - -

20  I CERTIFY that the foregoing
    is a correct transcript from
21  the record of proceedings
    in the above entitled matter.

22
    s/Richard W. Barry
23  _____
    Richard W. Barry, RPR
24

25